### UNITED STATES v. CHEW CHEONG.

(District Court, N. D. California. April 12, 1894.)

No. 3,032.

1. REGULATION OF CHINESE—DEPORTATION OF FELON.

A Chinese laborer, convicted of felony, is not entitled to register under the act (Nov. 3, 1893) extending the time for registration, and such person

may therefore be deported upon the expiration of the time fixed by the original act (May 5, 1892) for failure to register.

**2.** SAME—EXTENSION OF TIME—EX POST FACTO LAWS.

The act (Nov. 3, 1893) extending the time for registration of Chinese laborers is not ex post facto on the ground that it excepts from its provisions those who had been theretofore convicted of felony, as the deportation was only the consequence of a failure to register under the original act (May 5, 1892), and had no relation to the felony.

These were proceedings for the deportation of Chew Cheong under the provisions of the act of May 5, 1892, as amended by the act of November 3, 1893.

W. G. Witter, Asst. U. S. Atty.

John T. Dare, for defendant.

MORROW, District Judge. It has been established by the evidence in the case that the defendant is a Chinese laborer, and was, on the 25th day of July, 1879, tried in the municipal criminal court of the city and county of San Francisco, and convicted of the crime of an attempt to commit burglary in the second degree, and, on the 2d day of August, 1879, it was adjudged and decreed by the said court that the defendant should be punished by imprisonment in the state prison of the state of California for the term of two years, the sentence thereby fixing the grade of the crime as that of a felony. The present proceeding is for the purpose of having him deported, under the provisions of the act of May 5, 1892, as amended by the act of November 3, 1893. It is contended, however, on behalf of the defendant, that, notwithstanding he has been convicted of a felony, he is entitled to the full period of six months to register, as provided in the amended act, and that the proceeding is therefore premature; and, second, that to deport the defendant because of a crime committed in 1879 would be to give to the later act an ex post facto operation.

By the act of May 5, 1892, it was required that all Chinese laborers in the United States at the time of the passage of the act, and who were entitled to remain in the United States, should apply to the collector of internal revenue of their respective districts within one year after the passage of the act for a certificate of residence; and it was provided that any such Chinese laborer who should neglect, fail, or refuse to comply with the provisions of the act, or who, after one year from the passage thereof, should be found within the jurisdiction of the United States without such certificate of residence, should be deemed and adjudged to be unlawfully within the United States. It is a well-known fact that but few of the Chinese laborers in the United States made application for the certificate of residence as provided in that act. It has been claimed, as an excuse for such disregard of the law, that these people were advised by counsel that the law was not constitutional. The law was, however, sustained in the case of Fong Yue Ting v. U. S., 149 U. S. 698, 13 Sup. Ct. 1016. After this decision, congress passed the amendatory act of November 3, 1893, extending the provisions of the previous act relating to the certificate of residence for the period of six months. This period has not yet expired, but there

is a proviso in the amendatory act withholding the privilege of the extended period from Chinese persons who have been convicted of a felony. It is as follows:

"Provided, that no Chinese person heretofore convicted in any court of the states or territories or of the United States of a felony shall be permitted to register under the provisions of this act; but all such persons who are now subject to deportation for failure or refusal to comply with the act to which this is an amendment shall be deported from the United States as in said act and in this act provided, upon any appropriate proceedings now pending or which may be hereafter instituted."

The defendant allowed the year to expire in which he might have obtained a certificate of residence under the act of May 5, 1892. He had an opportunity to secure the evidence of his right to remain in the United States, but he declined to avail himself of that opportunity. It was his own fault that he did not comply with the requirements of the original act, and now that the period provided by it for registration has passed, how can he be heard to complain that he is not privileged to register under the terms of the amendatory act? So far as he is concerned, the act of May 5, 1892, is in full force and effect, and he is subject to be deported from the United States, because he failed to obtain a certificate of registration as required by that act. It is true that congress extended the period for obtaining a certificate of registration to certain Chinese persons, but not to the defendant. Having been convicted of a felony, he does not come within any of the privileges of the extended period, and cannot now, or at any time hereafter, obtain a certificate of residence under its provisions. This proceeding is, therefore, not premature.

It is contended, further, that at the date of the passage of the amended act the defendant was not subject to deportation, because proceedings were not then pending against him; but this objection is without force, in view of the fact that the statute provides for his deportation not only upon proceedings then pending, but upon a proceeding that might thereafter be instituted.

The claim that the amendatory act is ex post facto in this: that it adds an additional punishment for the crime of which the defendant was convicted in 1879, is also without merit. He is not being deported because of his conviction of a felony, but because he refused to comply with the act of May 5, 1892, and obtain a certificate of residence, when he had the opportunity to obtain it, in accordance with the provisions of that act. He determined to violate an existing law, and congress has simply refused to relieve him from the consequences of that act. There is clearly nothing ex post facto in such legislation. It does not inflict a greater punishment for the original offense than the law annexed to the crime when committed, nor does it, by reason of the original offense, alter the situation of the defendant to his disadvantage. His deportation arises out of the fact that he failed to comply with the act of May 5, 1892, and not because he has committed a felony. The latter fact operates simply to deprive him of a second opportunity to apply for a certificate of residence, and nothing more. But it is not necessary to rest this decision upon the determination

that the statute does not have an ex post facto operation. In the case of Fong Yue Ting v. U. S., supra, the supreme court held that:

"The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, is an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare."

And that:

"Chinese laborers, therefore, like all other aliens residing in the United States for a shorter or longer time, are entitled, so long as they are permitted by the government of the United States to remain in the country, to the safeguards of the constitution, and to the protection of the laws in regard to their rights of person and of property, and to their civil and criminal responsibility. But they continue to be aliens, having taken no steps towards becoming citizens, and incapable of becoming such under the naturalization laws; and therefore remain subject to the power of congress to expel them, or to order them to be removed and deported from the country, whenever, in its judgment, their removal is necessary or expedient for the public interests."

The power of congress to deal with aliens is, therefore, an absolute power, under which it may expel those of a particular class, and permit others to remain upon specified conditions. Under such a power, a classification that selects alien criminals for deportation is certainly the exercise of a just discrimination in the administration of the laws, and a wise authority in preserving the institutions of the country.